# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| ANGILA BARROW, | ) |
| | ) |
| Plaintiff, | ) |
| v. | ) Case No. CIV-14-225-RAW-SPS |
| | ) |
| CAROLYN W. COLVIN, | ) |
| Acting Commissioner of the Social | ) |
| Security Administration, | ) |
| | ) |
| Defendant. | ) |

## REPORT AND RECOMMENDATION

The claimant Angila Barrow requests judicial review pursuant to 42 U.S.C. § 405(g) of the decision of the Commissioner of the Social Security Administration denying her application for benefits under the Social Security Act. She appeals the decision of the Commissioner and asserts that the Administrative Law Judge ("ALJ") erred in determining she was not disabled. For the reasons set forth below, the decision of the Commissioner should be AFFIRMED.

## Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[.]" 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if h[er] physical or mental impairment or impairments are of such severity that [s]he is not only unable to do h[er] previous work but cannot, considering h[er] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy[.]" 42 U.S.C. § 423

(d)(2)(A). Social security regulations implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920.[1]

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g). This Court's review is limited to two inquiries: 1) whether the decision was supported by substantial evidence, and 2) whether the correct legal standards were applied. *See Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997) [citation omitted]. The term "substantial evidence" requires "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938). However, the Court may not reweigh the evidence nor substitute its discretion for that of the agency. *See Casias v. Secretary of Health & Human Services*, 933 F.2d 799, 800 (10th Cir. 1991). Nevertheless, the Court must review the record as a whole, and "[t]he substantiality of evidence must take into

---

[1] Step one requires the claimant to establish that she is not engaged in substantial gainful activity, as defined by 20 C.F.R. §§ 404.1510, 416.910. Step two requires the claimant to establish that she has a medically severe impairment (or combination of impairments) that significantly limits her ability to do basic work activities. *Id.* §§ 404.1521, 416.921. If the claimant is engaged in substantial gainful activity, or if her impairment is not medically severe, disability benefits are denied. At step three, the claimant's impairment is compared with certain impairments listed in 20 C.F.R. pt. 404, subpt. P, app. 1. If the claimant suffers from a listed impairment (or impairments "medically equivalent" to one), she is determined to be disabled without further inquiry. Otherwise, the evaluation proceeds to step four, where the claimant must establish that she lacks the residual functional capacity (RFC) to return to her past relevant work. The burden then shifts to the Commissioner to establish at step five that there is work existing in significant numbers in the national economy that the claimant can perform, taking into account her age, education, work experience, and RFC. Disability benefits are denied if the Commissioner shows that the claimant's impairment does not preclude alternative work. *See generally Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

account whatever in the record fairly detracts from its weight." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *see also Casias*, 933 F.2d at 800-01.

### Claimant's Background

The claimant was born on December 5, 1959, and was fifty-three years old at the administrative hearing (Tr. 134). She earned her GED, and has worked as an appliance assembler and machine operator (Tr. 124, 214). The claimant alleges she has been unable to work since June 1, 2004, due to migraine headaches (Tr. 214).

### Procedural History

On October 13, 2011, the claimant applied for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-434. Her application was denied. ALJ Bernard Porter held an administrative hearing and determined the claimant was not disabled in a written decision dated March 29, 2013 (Tr. 118-125). The Appeals Council denied review, so the ALJ's written decision represents the final decision of the Commissioner for purposes of this appeal. *See* 20 C.F.R. § 404.981.

### Decision of the Administrative Law Judge

The ALJ made his decision at step five of the sequential evaluation. He found that, through her date last insured of December 31, 2009, the claimant retained the residual functional capacity (RFC) to perform light work as defined in 20 C.F.R. § 404.1567(b), *i. e.*, she could lift/carry twenty pounds occasionally and ten pounds frequently, sit/stand/walk six hours in an eight-hour workday, and push and pull as much as she could lift and carry, but with the following exceptions: occasionally handling, fingering, and feeling; never climbing ladders or scaffolds; cannot work around

unprotected heights, or moving mechanical parts; can only occasionally operate a motor vehicle; and must avoid exposure to dust, fumes and gases, and extreme temperatures. Additionally, he determined that she can perform routine and repetitive tasks, but was restricted to a work environment which permits an absence of one day per month due to chronic symptomatology (Tr. 121). The ALJ concluded that although the claimant could not return to her past relevant work, she was nevertheless not disabled because there was work she could perform, *i. e*., counter clerk, and furniture rental clerk (Tr. 125).

## Review

The claimant contends that the ALJ erred: (i) by failing to properly assess her credibility, (ii) by failing to properly include limitations in her RFC, and (iii) by failing to fully develop the record. The undersigned Magistrate Judge finds these contentions unpersuasive for the following reasons.

The ALJ determined that the claimant had the severe impairments of migraine headaches and carpal tunnel syndrome (Tr. 120). The medical evidence reveals that on June 29, 2004, the claimant went to a walk-in clinic with a severe headache associated with nausea and vomiting, and was given shots and medication to treat her acute migraine (Tr. 427). On May 12, 2005, the claimant reported at a pulmonary workup that she had breathing problems that interfered with her sleep, as well as "lots of headaches," for which she took medication frequently (Tr. 315). On December 27, 2005, Dr. William A. Knubley noted that he had not seen her in a year and a half, but that she was tolerating her medications and doing pretty well, reporting two to three migraines per month with mild dull headaches two or three days a week (Tr. 308). Almost a year later, on

December 1, 2006, the claimant again complained of chronic migraine headaches, reporting increasingly frequent headaches over the past year, a change in her estrogen that may have been affecting the headaches, and frequent use of the medication Frova (but not as often as she would like to take it due to the expense). Noting that the increased usage of Frova likely caused her to have some rebound headaches, Dr. Knubley stated "Chronic persistent migraine headache disorder probably a combination of factors including estrogen aggravation, possibly medication overuse and potentially other problems" (Tr. 305). He increased the medication Topomax, but limited the Frova to two days a week (Tr. 305). The claimant next went in to the clinic for her GYN wellness exam, at which she provided the social history that she was disabled due to her migraine headaches but reported being in good health recently, with no weight gain, fever, fatigue, or headaches (Tr. 303).

Upon review of the record, state agency physicians determined that the claimant did not have a severe physical impairment (Tr. 470).

At the administrative hearing, the claimant testified that prior to her date last insured, she was having migraines two to three times a week, each lasting up to 16 hours with severe ones causing nausea (Tr. 137). She testified that medications did not prevent the migraines, but helped with the nausea and shortening the length of the migraines, and that when she had a migraine, she could not carry out her activities of daily living because she would need to lie down in a dark room, and she experienced nausea (Tr. 138, 142-143). She testified that she took time off under FMLA due to her headaches, but then eventually quit because of them (Tr. 150).

In his written opinion, the ALJ thoroughly summarized the claimant's own testimony as well as the medical evidence in the record. At step four, the ALJ found that the claimant's allegations were not supported to the extent alleged. He noted that despite her complaints of disabling migraine headaches, she waited over a year and a half between office visits for treatment (Tr. 123). The ALJ also found it was reasonable to rationalize that the claimant's misuse of medication may have exacerbated her condition (Tr. 123). As to the carpal tunnel syndrome, he noted that her neurologist found she no longer had symptoms after she stopped working, and that her carpal tunnel syndrome created some limitations, but that they were not disabling (Tr. 123). He gave some weight to the opinion of the state reviewing physicians who found she did not have a severe impairment, but that the record indicated her conditions lasted for a continuous 12-month period and had more than a minimal effect on her (Tr. 123).

The claimant first contends that the ALJ erred in analyzing her credibility. A credibility determination is entitled to deference unless there is some indication that the ALJ misread the medical evidence as a whole. *Casias v. Secretary of Health & Human Services*, 933 F.2d 799, 801 (10th Cir. 1991). But credibility findings "should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings." *Kepler v. Chater*, 68 F.3d 387, 391 (10th Cir. 1995) [citation omitted]. An ALJ's credibility analysis "must contain 'specific reasons' for a credibility finding; the ALJ may not simply 'recite the factors that are described in the regulations.'" *Hardman v. Barnhart*, 362 F.3d 676, 678 (10th Cir. 2004), *quoting* Soc. Sec. Rul. 96-7p, 1996 WL 374186, at *4 (July 2, 1996).

The ALJ noted in his written opinion that "the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not completely credible" (Tr. 46). Use of boilerplate language is generally disfavored, *see, e. g., Bjornson v. Astrue*, 671 F.3d 640, 645-646 (7th Cir. 2012) ("[T]he passage implies that ability to work is determined first and is then used to determine the claimant's credibility. That gets things backwards. The [ALJ] based his conclusion that Bjornson can do sedentary work on his determination that she was exaggerating the severity of her headaches. Doubts about credibility were thus critical to his assessment of ability to work, yet the boilerplate implies that the determination of credibility is deferred until ability to work is assessed without regard to credibility, even though it often can't be."), but this was not the sum total of the ALJ's analysis of the claimants' credibility. Elsewhere in the opinion, for example, the ALJ set out the applicable credibility factors and cited evidence supporting his reasons for finding that the claimant's subjective complaints were not credible, including: (i) waiting over a year and a half between office visits to seek treatment, and (ii) failing to use the proper dosage of her migraine headache medication, which may have exacerbated her condition (Tr. 123). The ALJ thus linked his credibility determination to evidence as required by *Kepler*, and provided specific reasons for his determination in accordance with *Hardman*. There is no indication here that the ALJ misread the claimant's medical evidence taken as a whole, and his determination of the claimant's credibility is therefore entitled to deference. *See Casias*, 933 F.2d at 801.

Second, the claimant asserts that the ALJ erred in his RFC assessment, specifically that she would be absent more than one day a month, and that the ALJ failed to properly account for a 2003 record (outside the alleged disability period) noting continued symptoms of carpal tunnel syndrome (Tr. 334). The undersigned Magistrate Judge finds that the ALJ did not, however, commit any error in his analysis. He noted and fully discussed the findings of the claimant's various treating and reviewing physicians, including a 2005 note from the claimant's neurologist, during the insured period, indicating that her carpal tunnel symptoms had resolved since her retirement (Tr. 308). The ALJ's conclusions "must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *Id.* at 1300, *quoting* Soc. Sec. Rul. 96-2p, 1996 WL 374188 at \*5. The ALJ's treatment of the medical evidence in this case meets these standards. The undersigned Magistrate Judge finds that the ALJ specifically noted the various findings of the claimant's treating and reviewing physicians, *adopted* any limitations suggested in the medical record, *and still concluded* that she could perform light work. When all the evidence is taken into account, the conclusion that the claimant could perform light work is thus supported by substantial evidence. *See Hill v. Astrue*, 289 Fed. Appx. 289, 293 (10th Cir. 2008) ("The ALJ provided an extensive discussion of the medical record and the testimony in support of his RFC finding. We do not require an ALJ to point to 'specific, affirmative, medical evidence on the record as to each requirement of an exertional work level before [he] can determine RFC within that category.'"), *quoting Howard v. Barnhart*, 379 F.3d 945, 949 (10th Cir. 2004).

Finally, the claimant contends that the ALJ failed to develop the record with regard to an unspecified mental impairment, asserting without reference to any part of the record that she "clearly" has a mental impairment that was not sufficiently addressed. She further asserts that the ALJ erred by failing to recontact her treating physicians to obtain a physical RFC assessment from them. It is true that a social security disability hearing is nonadversarial and the ALJ bears responsibility for ensuring that "an adequate record is developed during the disability hearing consistent with the issues raised." *Henrie v. United States Department of Health & Human Services*, 13 F.3d 359, 360-61 (10th Cir. 1993), *citing Musgrave v. Sullivan*, 966 F.2d 1371, 1374 (10th Cir. 1992). However, "it is not the ALJ's duty to be the claimant's advocate[,]" but "the duty is one of inquiry and factual development. The claimant continues to bear the ultimate burden of proving that she is disabled under the regulations." *Henrie*, 13 F.3d at 361 [citations omitted]. If the ALJ had doubts as to any of the evidence, he *could have* re-contacted her treating physicians to clear it up, *see* 20 C.F.R. § 404.1520b(c) ("[I]f after weighing the evidence we determine we cannot reach a conclusion about whether you are disabled, we will determine the best way to resolve the inconsistency or insufficiency . . . We may recontact your treating physician, psychologist, or other medical source."), but he was under no obligation to do so, as the claimant implies. Here, the claimant has not met her burden.

The essence of the claimant's appeal here is that the Court should re-weigh the evidence and determine her RFC differently from the Commissioner, which the Court simply cannot do. *See Corber v. Massanari*, 20 Fed. Appx. 816, 822 (10th Cir. 2001)

("The final responsibility for determining RFC rests with the Commissioner, and because the assessment is made based upon all the evidence in the record, not only the relevant medical evidence, it is well within the province of the ALJ."), *citing* 20 C.F.R. §§ 404.1527(e)(2); 404.1546; 404.1545; 416.946.

### Conclusion

The undersigned Magistrate Judge hereby PROPOSES a finding by the Court that correct legal standards were applied by the ALJ, and the Commissioner's decision is therefore legally correct. The undersigned Magistrate Judge thus RECOMMENDS that the Court AFFIRM the decision of the Commissioner. Any objections to this Report and Recommendation must be filed within fourteen days. *See* Fed. R. Civ. P. 72(b).

**DATED** this 11th day of September, 2015.

_____
**STEVEN P. SHREDER**
**UNITED STATES MAGISTRATE JUDGE**